UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

COLONY INSURANCE COMPANY                        CIVIL ACTION

VERSUS                                          NO:  09-0763

NJC ENTERPRISES d/b/a SUBWAY                    SECTION: "A" (3)

## ORDER AND REASONS

Previously pending before the Court was a **Motion for Partial Summary Judgment on the Issue of Insurance Coverage (Rec. Doc. 73)** filed by Defendant, NJC Enterprises ("NJC"). Plaintiff Colony Insurance Company ("Colony"), and Counter-Defendants Hartford Fire Insurance Company ("Hartford") and Nutmeg Insurance Agency, Inc. ("Nutmeg") (collectively hereinafter "Hartford/Nutmeg" singular pronouns used), opposed this motion. Also previously pending before the Court was a **Rule 12(b)(6) Motion to Dismiss Cross Claim of Colony Insurance Company (Rec. Doc. 108)** filed by Counter-Defendants Hartford/Nutmeg. This motion was opposed by Plaintiff Colony. Both motions were originally set for oral argument on January, 9, 2013 and subsequently reset for oral argument on January 17, 2013 due to a scheduling conflict on the Court's calendar. Prior to oral argument, however, the Court issued an order (Rec. Doc. 129) for further briefing on the issue of whether Hartford/Nutmeg was a "Premium Finance Company" as that term is defined under Louisiana law and dismissing without prejudice the pending dispositive motions that would likely be affected by the Court's reconsideration and resolution of this "Premium Finance Company" issue.[1]

---

[1]In addition to NJC's Motion for Partial Summary Judgment on the Issue of Insurance Coverage (Rec. Doc. 73) and Hartford/Nutmeg's 12(b)(6) Motion to Dismiss Cross Claim of

Currently before the Court are: Hartford/Nutmeg's **Motion for Leave to File Supplemental Memorandum on Premium Finance Issue (Rec. Doc. 140)** and Colony's **Motion for Leave to File Colony Insurance Company's Response to Hartford Fire Insurance Company's and Nutmeg Insurance Agency Inc.'s Supplemental Memorandum and Affidavit (Rec. Doc. 164)**; NJC's **Motion for Reconsideration (Rec. Doc. 142)** wherein NJC re-urges its prior Motion for Partial Summary Judgment (Rec. Doc. 73); Hartford/Nutmeg's **Motion to Re-File Rule 12(b)(6) Motion to Dismiss Cross Claim of Colony Insurance Company (Rec. Doc. 147)**[2]; Colony's **Renewed Cross-Motion for Summary Judgment of Colony Insurance Company on Issue of Insurance Coverage (Rec. Doc. 151)**[3]; and NJC's **Motion for Leave to File Supplemental Memoranda in Support of Motion for Partial Summary Judgment and in Opposition to Cross Motion for Summary Judgment (Rec. Doc. 178)**.

For the reasons that follow, Hartford/Nutmeg's Motion for Leave to File Supplemental Memorandum on Premium Finance Issue **(Rec. Doc. 140)** and Colony's Motion for Leave to File Colony Insurance Company's Response to Hartford Fire Insurance Company's and Nutmeg Insurance Agency Inc.'s Supplemental Memorandum and Affidavit **(Rec. Doc. 164)** are **DENIED**; NJC's Motion for Reconsideration **(Rec. Doc. 142)** is **GRANTED** to the extent that it reinstates

---

Colony Insurance Company (Rec. Doc. 108), the Court also dismissed without prejudice Colony Insurance Company's Cross-Motion for Summary Judgment on Issue of Insurance Coverage (Rec. Doc. 82), and Colony's Motion for Expedited Hearing on its Cross-Motion for Summary Judgment on the Issue of Insurance Coverage (Rec. Doc. 83).

    [2]Oral argument on this motion was requested (Rec. Doc. 148), however, the Court finds it will not be helpful and so denies this request.

    [3]Oral argument on this motion was requested (Rec. Doc. 159), however, the Court finds it will not be helpful and so denies this request.

NJC's  Motion for Partial Summary Judgment on the Issue of Insurance Coverage (Rec. Doc. 73)[4];

Hartford/Nutmeg's Motion to Re-File Rule 12(b)(6) Motion to Dismiss Cross Claim of Colony

Insurance Company **(Rec. Doc. 147) is GRANTED** to the extent that it reinstates

Hartford/Nutmeg's Rule 12(b)(6) Motion to Dismiss Cross Claim of Colony Insurance Company

(Rec. Doc. 108)[5]; Colony's Renewed Cross-Motion for Summary Judgment of Colony Insurance

Company on Issue of Insurance Coverage **(Rec. Doc. 151) is GRANTED** to the extent that it

reinstates Colony's Cross-Motion for Summary Judgment on Issue of Insurance Coverage (Rec.

Doc. 82).

For the following reasons NJC's **Motion for Partial Summary Judgment on the Issue of**

**Insurance Coverage (Rec. Doc. 73) is GRANTED**; accordingly, NJC's **Motion for Leave to**

**File Supplemental Memoranda in Support of Motion for Partial Summary Judgment and in**

**Opposition to Cross Motion for Summary Judgment (Rec. Doc. 178) is DENIED as moot**;

and Colony's **Cross-Motion for Summary Judgment on Issue of Insurance Coverage (Rec.**

**Doc. 82) is DENIED**. Hartford/Nutmeg's Rule 12(b)(6) Motion to Dismiss Cross Claim of

Colony Insurance Company (Rec. Doc. 108) remains under submission.

## I.  BACKGROUND

Plaintiff Colony initially sued Defendant NJC seeking a declaratory judgment by the Court.

---

[4]Oral argument on this motion was requested (Rec. Doc. 76) and initially granted, however after considering the supplemental briefing previously ordered, the Court finds it will not be helpful and so denies this request.

[5]The Court notes that argument on this motion was requested (Rec. Doc. 109); because this motion (Rec. Doc. 108) remains under submission the Docket Clerk is directed to reinstate this request for oral argument (Rec. Doc. 109).

Colony asserts that a policy of commercial property insurance numbered CF3576690 issued to NJC through Counter-Defendants Hartford/Nutmeg was cancelled for non-payment of premium as of September 24, 2008, and that, having cancelled the policy and issued the appropriate return premium, Colony has no further obligation to the insured under the subject policy.  Colony invokes the provisions of Title 28 U.S.C.A. § 2201 for the purpose of declaring and establishing the rights and legal relationships between the parties.

NJC responded with an answer and counterclaim **(Rec. Doc. 32)**, asserting that the cancellation of NJC's policy was not initiated by either Colony or Hartford/Nutmeg until at least September 29, 2008, days after the loss allegedly sustained by NJC occurred.  NJC alleges that Colony and Hartford/Nutmeg, either collectively or individually, retroactively cancelled NJC's coverage effective September 24, 2008 specifically in order to avoid covering NJC's loss.  Colony and Hartford/Nutmeg deny these allegations and assert that the policy in question was validly cancelled on September 24, 2008 due to non-payment of the premium by NJC.

The facts as alleged by the parties are as follows.  Defendant NJC operated a Subway franchise restaurant in Baton Rouge, Louisiana from September 2007 until September 25, 2008.  NJC sought commercial property insurance through Counter-Defendant Hartford, but Hartford declined to write the requested coverage and referred placement of the coverage to its Alternative Market Placement unit operated through Counter-Defendant Nutmeg.  Nutmeg is a subsidiary of Hartford, and all of its employees are Hartford employees.  Hartford/Nutmeg has testified that it is not an agent of Colony and that it is not a licensed premium finance company.

Nutmeg placed the commercial property coverage for NJC through Gresham, a surplus lines broker.  Gresham is not a party to the present action.  Through Gresham, the commercial property

4

insurance policy was issued by Colony to NJC.

In connection with the issuance of the Colony policy to NJC, on May 22, 2008, NJC executed a power of attorney agreement which authorized Hartford, through Nutmeg, to advance the premium payment to Colony.  Through the same power of attorney agreement NJC appointed Nutmeg as NJC's attorney in fact, and gave Nutmeg full authority to cancel the Colony policy should NJC fail to pay the amounts due Nutmeg thereon.  Hartford/Nutmeg paid Colony the full premium on behalf of NJC and then billed NJC through Hartford's billing system.

According to Hartford/Nutmeg, NJC failed to pay the amounts due.  As a result, on September 9, 2008, Hartford/Nutmeg mailed a letter and a document which it refers to as a "direct notice of cancellation" to NJC at the last known address contained in its records.  The letter was accompanied by a document entitled "Notice of Cancellation," also dated September 9, 2008, which reflected that cancellation was due to non-payment of premium and listed the "Effective Date of Notice" as September 24, 2008 at 12:01 a.m.  NJC does not dispute that it received this letter and notice, but asserts that they do not constitute a valid notice of cancellation as required by the relevant Louisiana statutes.

According to NJC, on September 25, 2008, NJC ceased doing business in its operation of the Subway restaurant as a result of a fire which completely destroyed the premises and its contents. NJC alleges that it reported the fire loss to Colony and Hartford/Nutmeg on or about September 29, 2008.  NJC further asserts that it had not received any correspondence from Colony regarding cancellation as of this date.

Colony has since denied coverage for the alleged fire loss sustained by NJC on September 25, 2008.  Colony and Hartford/Nutmeg both assert that the insurance policy was cancelled

5

effective September 24, 2008 based on non-payment of premium.

## II. STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id., citing Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the non-moving party. *Id., citing Anderson*, 477 U.S. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id., citing* Fed. R. Civ. Proc. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993), *citing Anderson*, 477 U.S. at 250.

## III. DISCUSSION

The central dispute in this case concerns the date of the policy cancellation.  According to Colony and Hartford/Nutmeg, NJC's policy was cancelled effective September 24, 2008, the day before the alleged fire loss, due to non-payment of the premium by NJC.  NJC asserts that its policy was, in fact, still in effect on September 25, 2008 and that it should be able to file a claim based on its losses.

In the Court's previous order (Rec. Doc. 67) denying the Motion for Partial Summary Judgment on the Issue of Coverage (Rec. Doc. 19) filed by NJC, the Motion for Summary Judgment (Rec. Doc. 21) filed by Hartford/Nutmeg, and the Motion for Summary Judgment (Rec. Doc. 22) filed by Colony, the Court held that La. R.S. 9:3550, which applies to persons engaged in the business of financing insurance premiums for consumers entering into premium finance agreements, was inapplicable to the present case.  Under La. R.S. 9:3550, once an insurer has mailed any unearned premium and commission to the insurance premium finance company following valid cancellation of a policy, said insurer is fully discharged from all liability under the insurance contract for any loss occurring subsequent to the effective date of cancellation.  The Court based its decision on the fact that Hartford/Nutmeg had stated that it was not a licensed insurance premium finance company.

Upon further review, after a careful analysis of the relevant statutes and case law interpreting La. R.S. 9:3550, the Court reaffirms its prior holding that Hartford/Nutmeg is not an insurance premium finance company, as that term is defined under Louisiana law.

### III. a. Reaffirmation of Prior Holding–La. R.S. 9:3550 Inapplicable

In its motion for partial summary judgment, NJC relies heavily upon this Court's prior ruling

(Rec. Doc. 67) arguing that "the Court found that Hartford/Nutmeg was not a premium finance company and that the provisions of La. R.S. 9:3550 are inapplicable to this case." (Rec. Doc. 73-2 at 2) (La. R.S. 9:3550 is entitled "Insurance Premium Finance Companies"). The Court based its determination on Hartford/Nutmeg's averment that it was not a licensed premium finance company but was uneasy with this conclusion given Hartford/Nutmeg's status as an intermediary that initially paid Colony the insurance policy premium on NJC's behalf. In its pleadings, much has been made by Colony of the fact that Hartford/Nutmeg's lack of licensure as a premium finance company alone does not dispose of the issue of the applicability of La. R.S. 9:3550. On this issue, the Court agrees.

Importantly, La. R.S. 9:3550 states:

A. This Section shall apply to *any person* engaged in the business of financing insurance premiums for consumers entering into premium finance agreements or otherwise acquiring premium finance agreements.

B. For purposes of this Section:

* * *

(3) "Person" includes an individual, limited liability company, partnership, association, business corporation, nonprofit corporation, common law trust, joint-stock company, or any other group of individuals however organized.

* * *

La. R.S. 9:3550 (emphasis added). Interpreting this statute, the Louisiana Court of Appeal, Third Circuit, in *Britten v. Reavis*, 503 So.2d 1149 (La.App. 3 Cir. 1987), held:

Thus, even though a person or business fails to obtain a license as required by Subsection (C), Subsection (A) makes the remaining provisions dealing with insurance premium finance companies nevertheless applicable. We note additionally that the subsection dealing with the requirements for the cancellation of insurance contracts does *not* provide that *only* an insurance premium finance company *holding a license* issued

8

under R.S. 9:3550 is capable of cancelling a policy.

*Id.* at 1153 (emphasis added).

The language of the statute at issue here, as interpreted by the Louisiana Court of Appeal, Third Circuit, therefore leaves open the possibility that a "person" can write and enter into premium finance agreements whether officially licensed as a premium finance company or not. Accordingly, Hartford/Nutmeg's absence of licensure alone does not resolve the issue of the applicability of La. R.S. 9:3550.

In *Britten*, Penn-America Insurance Company ("Penn-America") wrote a "Business Auto Policy" covering several vehicles and insuring Sunrise Industries, Inc. ("Sunrise"). *Id.* at 1150. A.I. Credit Corporation ("AICCO"), a New York premium finance company, financed the premiums, requiring a down payment from Sunrise and eight equal monthly payments. *Id.* In the premium finance agreement Sunrise gave AICCO, as security, a power of attorney to cancel the policy for non-payment of premiums, which, in turn, enabled AICCO to recover any unearned premiums from Penn-America in the event that Sunrise defaulted under the finance agreement. *Id.* Similar to the instant matter then, a business contracted with a third party to have that third party pay an insurance premium on its behalf. Also similar was the fact that pursuant to this agreement, the business was required to execute a power of attorney enabling the third party payor to cancel the insurance policy should the business fail to pay back the premium in accordance with the terms of an underlying contract. Also similar was the fact that AICCO, the third party paying the insurance premium, like Hartford/Nutmeg in the instant matter, was not a licensed insurance premium finance company, and Sunrise like NJC, was a business. Therefore, given the holding of *Britten*, any argument that La. R.S. 9:3550 does not apply because Hartford/Nutmeg is not a *licensed* insurance premium finance

company is unavailing.

Critically, however, the holding in *Britten* does not dispose of the instant matter because the language of the statute at issue, La. R.S. 9:3550, has been amended since that case was decided. When the facts underlying the decision in *Britten* occurred, La. R.S. 9:3550 read in pertinent part: "This Section shall apply to any person engaged in the business of financing insurance premiums, entering into premium finance agreements or otherwise acquiring premium finance agreements." In 1995 the statute was amended to read: "**This Section shall apply to any person engaged in the business of financing insurance premiums** *for consumers* **entering into premium finance agreements or otherwise acquiring premium finance agreements.** La. R.S. 9:3550(A)  (emphasis added). Though La. R.S. 9:3550 is a subsection of the Louisiana Consumer Credit Law ("LCCL"), La. R.S. 9:3510, the Louisiana legislature apparently felt it necessary to emphasize the fact that subsection 3550 applied to: "any person engaged in the business of financing insurance premiums *for consumers. . .[.]" Id.* (emphasis added).  At paragraph ten (10) under the definitions subsection of the LCCL, La. R.S. 9:3516(10), the statute reads:

"Consumer" means a natural person[6] who purchases goods, services, or movable or

---

[6]*See* La. C.C. Art. 24: There are two kinds of persons: natural persons and juridical persons. A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.

*See also* La. C.C. 12:1303(A): All limited liability companies, regardless of date of organization, shall have the powers, rights, and privileges provided for a corporation organized under the Business Corporation Law (R.S. 12:1 et seq.), and provided for a partnership organized under Title XI of Book III of the Louisiana Civil Code.

*See also* La. C.C. 12:1304 (emphasis added): A. One or more persons capable of contracting may form a limited liability company by filing the articles of organization and the initial report with the secretary of state. . . . C. Upon the issuance of the certificate of organization, the limited liability company shall be duly organized, and *its separate existence* shall begin as of the time of filing of the

immovable property or rights therein, for a personal, family, or household purpose and includes a purchaser or buyer in a consumer credit sale[7] or transaction[8] made with the use of a seller credit card[9] or otherwise, or a borrower or debtor in a consumer loan,[10] revolving loan account,[11] or a lender credit card.[12]

---

articles of organization with the secretary of state. . . .

[7]*See* La. R.S. 9:3516(12): A "consumer credit sale" is the sale of a thing . . . or immovable property, in which a credit service charge is charged and the purchaser is permitted to defer all or part of the purchase price or other consideration in two or more installments excluding the down payment when the thing is purchased primarily for personal, family, or household purposes, and the purchaser is a person other than an organization. . .

*See* La. R.S. 9:3516(16)(a): "Credit service charge" means the sum of the following: (i) All charges payable directly or indirectly by the consumer and imposed directly or indirectly by the seller as an incident to the extension of credit, including any of the following types of charges that are applicable: time price differential; service; carrying or other charge, however denominated; premium or other charge for any guarantee or insurance protecting the seller against the consumer's default or other credit loss; and (ii) Charges paid by the consumer for investigating the collateral or credit worthiness of the consumer or for commissions or brokerage for obtaining the credit, irrespective of the person to whom the charges are paid or payable, unless the seller had no notice of the charges when the credit was granted.

*See* La. R.S. 9:3516(24): "Organization" means corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association.

[8]*See* La. R.S. 9:3516(13): "Consumer credit transaction" means a consumer loan or a consumer credit sale . . .

*See* La. R.S. 9:3516(14): "Consumer loan" means a loan of money or its equivalent made by a supervised financial organization, a licensed lender, or lender in which the debtor is a consumer, and the loan is entered into primarily for personal, family, or household purposes and includes debts created by the use of a lender credit card, revolving loan account, or similar arrangement, as well as insurance premium financing.

[9]*See* La. R.S. 9:3516(31): "Seller credit card" means a revolving charge account that may be accessed by use of a credit card.

*See* La. R.S. 9:3516(15): "Credit card" means any card, plate, coupon book, or other single credit device that may be used from time to time to obtain credit.

[10]*See* Fn. 8. above.

[11]*See* La. R.S. 9:3516(30)(a): "Revolving loan account" means an arrangement between a lender and a consumer pursuant to which: (i) The creditor may permit the consumer to obtain

11

All of this is to say that the definition of "consumer" as described at subsection 3516(10) must be read into the statute on "Insurance Premium Finance Companies" at La. R.S. 9:3550.[13] The Court finds that the term "consumer" does not include a business engaged in the purchase of insurance for its commercial enterprise as was the case in the instant matter.[14] As a general rule of statutory construction in Louisiana, "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La. R.S. 1:4. While the definition of "consumer" under the LCCL requires a cumbersome and circuitous analysis, the Court

---

consumer loan advances on a preauthorized basis; (ii) The creditor reasonably contemplates repeated transactions; (iii) The creditor may impose a loan finance charge from time to time on the outstanding unpaid balance of the consumer's account; and (iv) The amount of credit that may be extended to the consumer under the account, up to any limit set by the creditor, is generally made available to the extent that any unpaid balance is repaid. (b) The amount borrowed under a revolving loan account may include, if required by the creditor, an amount not greater than ninety-nine dollars and ninety-nine cents exceeding the draft or similar order if said amount is immediately credited to the consumer's deposit account with the creditor or with the creditor's agent.

[12]*See* La. R.S. 9:3516(21): "Lender credit card" means a revolving loan account that may be accessed by use of a credit card. . . .

[13]The Court notes that under subsection 3512, "exclusions" to the LCCL, the statute reads: "This law shall not apply to . . . (2) The sale of insurance by an insurer, *except as otherwise provided in the part on insurance. . .*" La. R.S. 9:3512(2) (emphasis added). La. R.S. 9:3550 entitled "Insurance Premium Finance Companies" comes thereafter, and being a subsection on insurance, is accordingly excluded from the exclusions section of the LCCL as detailed in subsection 3512(2).

[14]*See Floyd v. Baton Rouge Sash & Door Co., Inc.*, 502 So.2d 1073, 1076 (La. 1987) ("The Louisiana Consumer Credit Law was set up to regulate *consumer* credit transactions . . . . Under the U.C.C.C., like the Louisiana law, the consumer purpose test is the basic standard for determining coverage. . . .The personal loan is a consumer credit loan, the business loan is not." (emphasis in original); *See also Commercial National Bank in Shreveport v. Scott*, 398 So.2d 1127, 1128 (La. 1981) ("Basically, the Consumer Credit Law applies to all purchases of goods, services and property by a natural person for personal, family, household or agricultural purposes unless expressly excluded.").

finds that the provisions of La. R.S. 9:3550 are inapplicable to the instant case because NJC,[15] the

purported "consumer" is a not a "natural person" and the transaction NJC was engaged in was for a

business purpose. In 1995, when the Louisiana legislature amended La. R.S. 9:3550 to include the

words "for consumers" the intent seems to have been to restrict, or to clarify an implicit restriction

in, the application of this statute. The Court interprets this restriction as barring the application of

La. R.S. 9:3550 in situations, such as the one presented in the instant case, where a commercial

enterprise has entered into  what is essentially a business loan for a business purpose.  Therefore, in

finding that La. R.S. 9:3550 does not apply to the instant matter, the Court must next analyze

whether Hartford/Nutmeg's purported cancellation was effective prior to or after NJC's alleged

loss.


### III. b. **"Notice of Cancellation"**

NJC pleads that the September 9, 2008 "Notice of Cancellation" sent by Hartford/Nutmeg

to NJC fails to comply with the statutory requirements to be deemed a proper "Notice of

Cancellation" as it evidences a mere intent to cancel rather than an unequivocal communication of

cancellation. The letter at issue states in part:

> The Hartford has initiated cancellation for non-payment of premium on
> 9/24/08.
> However, because we believe you may want to maintain this important
> protection, we are offering to reinstate your coverage as of the cancellation effective
> date if we receive your premium payment of $1603.16 before 09/24/08. If we receive
> your payment before this date, we will rescind this cancellation, reinstate your policy and

---

[15]NJC Enterprises, L.L.C. d/b/a Subway, is an active Louisiana Limited Liability Company
in good standing domiciled at 1746 Wooddale Boulevard, Baton Rouge Louisiana. The State of
Louisiana, Secretary of State, Commercial Division, lists registration of this entity as of May 9, 2007.

continue your coverage without interruption. . . .

(Rec. Doc. 77-8 at 43). NJC argues that:

> As stated by the Louisiana First Circuit in *State Farm Mut. Auto. Ins. Co. v. Villneuve*, "A notice of intent to cancel if the premium is not paid is not the same as a notice of cancellation for nonpayment of premium . . . ." As the Court noted, "[a] notice of intent to cancel is nothing more than a demand for payment, whereas a notice of cancellation positively puts an insured on notice that the policy will be cancelled."

(Rec. Doc. 73-2 at 11) (citing *State Farm Mut. Auto. Ins. Co. v. Villneuve*, 747 So.2d 777, 780 (La.App.

1 Cir. 1999)). Given this standard, NJC asserts:

> The "notice of cancellation" [sent by Hartford/Nutmeg to NJC on September 9, 2008] says that Hartford (which, again, was not NJC's insurer and was not the agent of Colony) had "initiated cancellation" not that the policy was cancelled. Moreover, similar to the Villneuve case, the "notice" from Hartford states that if payment was received prior to September 24, 2008, it would "continue [NJC's] coverage without interruption."

(Rec. Doc. 73-2 at 11) (emphasis omitted). NJC concludes by arguing, "Thus, even if the September

9, 2008 letter had any bearing on the effective date of the cancellation by Colony at

Hartford/Nutmeg's request (which it does not), it is apparent that it would not constitute a valid

'notice of cancellation' anyway." (Rec. Doc. 73-2 at 11-12).

Hartford/Nutmeg, in response to this argument that the September 9, 2008 letter to NJC

was a mere intent to cancel and not a positive notification that the policy was being cancelled,

argues:

> *Villneuve* is not applicable as it involves a situation where an insurer sent a notice to a policyholder requesting prospective payment on a premium that was not yet due [and where] the court found the language used in the notice did not "positively put Villneuve on notice that the policy was going to be cancelled."[] The same cannot be said regarding the Hartford/Nutmeg notice, where the notice of cancellation letter informed NJC that "[t]he Hartford initiated cancellation for nonpayment" and "[i]f we receive your payment before this date, we will rescind this cancellation, [and] reinstate your policy. . . ."

(Rec. Doc. 74 at 10) (citing *Villneuve*, 747 So.2d 777 at 778, 80). Hartford/Nutmeg continues:

> Various circuit courts in Louisiana have held that the type of notice sent by Hartford/Nutmeg is sufficient and unequivocal notice of cancellation, not a mere request for payment. . . . The Hartford/Nutmeg cancellation notice put NJC on notice of the time, date, and reason its policy was to be cancelled. Such notice is unequivocal notice of cancellation.

(Rec. Doc. 74 at 11).

Colony, in its opposition to NJC's motion for partial summary judgment, supports the Hartford/Nutmeg position that *Villneuve* is distinguishable from the instant case arguing that the language contained in the purported notice of cancellation was sufficient to qualify this letter as an unequivocal notice of cancellation.

While it may be true that the language contained in the purported cancellation notice was sufficient to put NJC on notice that its policy was being terminated, ultimately this case is distinguishable from the several cases cited in support of Colony and Hartford/Nutmeg's position. Importantly, the cases cited by Hartford/Nutmeg all concern cancellations effected by the *insurer* itself. In the instant case, Hartford/Nutmeg was not NJC's insurer, nor Colony's agent.[16]  While Hartford/Nutmeg was authorized by NJC via their power of attorney to cancel NJC's policy, this agreement did not, and frankly could not in the absence of a statutory grant such as the one found at La. R.S. 9:3550, afford Hartford/Nutmeg the power to take any action that NJC could not take itself. Accordingly, this cancellation by Hartford/Nutmeg, standing in for NJC, is effectively a cancellation by the *insured* not the insurer. As held *supra*, because La. R.S. 9:3550 is inapplicable to the instant dispute, Hartford/Nutmeg, standing in for NJC, was only able to effect cancellation of

---

[16]Hartford/Nutmeg, in response to NJC's requests for admissions, has admitted that it was not an agent of Colony. (Rec. Doc. 73-4 at 4).

NJC's policy via its notice to Colony. As stipulated by Hartford/Nutmeg,[17] this did not occur until October 2, 2008. By the Court's reading of La. R.S. 22:885, the statute that establishes the procedure for cancellation by the insured, October 2, 2008 was the earliest possible date that Hartford/Nutmeg, pursuant to its power of attorney, could have effected cancellation as this was the date that Hartford/Nutmeg first notified the insurer, Colony, of its desire to cancel.

The Court notes further, that while NJC may not have honored its obligation to Hartford/Nutmeg, Colony was paid in advance, and in full, the premium on behalf of NJC and accordingly undertook the risk which allegedly manifested.

### III. c. NJC's Motion for Partial Summary Judgment – Applicability of La. R.S. 22:885

Based on the Court's prior holding that La. R.S. 9:3550 was inapplicable, NJC dedicates the balance of its motion for partial summary judgment on the express language of the Colony policy, and the language contained in La. R.S. 22:885, the statute NJC argues would control were Hartford/Nutmeg's contractual relationship with NJC not based on a premium finance agreement. NJC argues, "by the clear language of the Colony policy at issue, for the 'Named Insured' to cancel the policy (or someone 'standing in its shoes'), the 'Named Insured' must provide advance written notice of cancellation." (Rec. Doc. 73-2 at 7) (emphasis omitted). NJC continues, "[s]ending written notice of cancellation on October 2, 2008 for an effective date of September 24, 2008 does not, in any way, meet any reasonable or rational definition of 'advance written notice of cancellation.'" (*Id.*) (emphasis omitted). NJC contends that because no notice of cancellation was sent to Colony until

---

[17] *See* Rec. Doc. 73-4 at 7.

after October 2, 2008, given the policy language and the statutory advance notification requirements (coupled with the inapplicability of La. R.S. 9:3550), October 2, 2008 is the earliest effective date of cancellation possible.

Hartford/Nutmeg in its opposition to NJC's motion for partial summary judgment argues that "NJC is simply wrong in asserting that La. R.S. 22:885(A) contains a statutory requirement that an insured (or person with the insured's authorized Power of Attorney) must submit written notice of cancellation to the insurer prior to or on the effective date of cancellation." (Rec. Doc. 74 at 1). Hartford/Nutmeg reasons that because "[t]he legislature used the permissive 'may' [and] not the mandatory 'shall' in this part of the statute[,]" the act of providing written notice of cancellation to the insurer in advance of effective cancellation "is one means by which an insured may cancel its policy, but it is not the exclusive means to do so." (*Id.*) Hartford/Nutmeg dedicates the majority of its opposition to this semantic distinction suggesting that the case of *Erdey v. Progressive Sec. Ins. Co.*, 31 So.3d 417 (La.App. 1 Cir. 2009) supports its argument that the legislature intended to allow the insured, or one standing in for the insured, the option of cancelling a policy of insurance without advance notification.

La. R.S. 22:885(A) reads:

> Cancellation by the insured of any policy which by its terms may be cancelled at the insured's option or of any binder based on such policy <u>*may* be effected by written notice thereof to the insurer and surrender of the policy or binder for cancellation prior to or on the effective date of such cancellation</u>. In the event the policy or binder has been lost or destroyed and cannot be surrendered, the insurer may in lieu of such surrender accept and in good faith rely upon the insured's written statement setting forth the fact of such loss or destruction.

La. R.S. 22:885(A) (emphasis added).

In *Erdey*, the Louisiana Court of Appeal, First Circuit addressed a situation in which an

insured called his insurance provider over the telephone and verbally requested immediate cancellation of his policy. *Erdey*, 31 So.3d 417. The court held that this verbal cancellation was valid because "the legislature intended to allow an insured to cancel his policy in a manner other than those provided under the statute." *Id.* at 420. Clearly, the facts of *Erdey*, and accordingly its holding, are distinct from the instant dispute. In *Erdey*, this issue was whether an insured could *verbally* cancel his or her policy. In the instant case the issue is whether the insured, or one standing in for the insured, could *retroactively* cancel its policy. While the language of the statute indicates that written cancellation may not be the sole means of *communicating* a desire to prematurely cancel a policy of insurance, the Court is not persuaded that the auxiliary verb "may" reaches so far as to effect the temporal clause "*prior to or on the effective date of . . . .*" The Court, and ostensibly Hartford/Nutmeg, has been unable to locate any case law interpreting this statute to allow cancellation with an effective date preceding the date of notification of cancellation under La. R.S. 22:885. Accordingly, under the terms of La. R.S. 22:885(A), the Court finds that the earliest the instant policy of insurance could have been cancelled was October 2, 2008, when Hartford/Nutmeg, via its power of attorney, notified Colony of its desire to cancel.

### III. d. Colony's Opposition to NJC's Motion for Partial Summary Judgment and Cross Motion for Summary Judgment

Colony in its opposition to NJC's motion for partial summary judgment, and in support of its own cross motion for summary judgment (Rec. Doc. 82), relies heavily on the provisions of La. R.S. 9:3550. Colony acknowledges in a footnote that:

> By way of its Order and Reasons of November 10, 2011, (Doc. No. 67) on Cross Motions for Summary Judgment filed by Colony, Hartford/Nutmeg and NJC, the Court stated (pg. 5)

> "[h]owever, Hartford/Nutmeg has established that it is not an insurance premium finance company; therefore, the provisions of 9:3550 do not apply to the present case." As will be hereafter shown, as respects <u>Colony</u>, the fact that, unbeknownst to Colony, Hartford/Nutmeg was apparently (according to Hartford/Nutmeg now) not formally licensed as a Premium Finance Company in Louisiana does not mean that the provisions of La. R.S. 9:3550 do not apply here.

(Rec. Doc. 77-2 at 2 n.1). While Colony is correct that the issue of licensure does not dispose of issue of the applicability of La. R.S. 9:3550 in the instant dispute, the fact that NJC is not a "conumer" as defined under that statute, does. And, because the Court finds that La. R.S. 9:3550 does not apply, it does not find it necessary to entertain the majority of Colony's argument in this regard.

Colony argues in the alternative however, that the law of mandate in Louisiana governs the relationship between NJC and Hartford/Nutmeg, and as such that NJC, as principal, is bound to honor the obligations undertaken by Hartford/Nutmeg as mandatary. Colony asserts that:

> Under the clear and expressed provisions of the Power of Attorney Agreement actually executed by NJC, Hartford/Nutmeg had expressed authority to cancel without delay, the subject Colony policy upon NJC's default. Even if NJC should argue that it never intended such a harsh result, its execution of the power or attorney coupled with the specific actions undertaken on NJC's behalf by Hartford/Nutmeg in procuring and fully paying in advance the premium for the Colony policy demonstrated Hartford/Nutmeg's clear apparent authority to act as it did – on NJC's behalf – in undertaking to cancel NJC's policy in the manner in which it did so and as at issue here.

(Rec. Doc. 77-2 at 10). The defect in this argument however is that it presupposes that NJC had the authority to effect cancellation of the Colony policy *before* Colony was notified of the cancellation. The Court has been unable to locate any support for this proposition. And, since there is no support for the proposition that NJC *in its own right* could have retroactively cancelled its policy with Colony, there is also no support for the proposition that NJC could have somehow conveyed this authority it did not have to Hartford/Nutmeg via the power of attorney agreement. While La. R.S. 9:3550

19

provides that an  insurance premium finance company can effect cancellation before notifying an insurer of said cancellation, thereby implicitly standing in for the *insurer*, as held *supra* this statute is inapplicable to the instant dispute. Because the Court has been unable to locate any other means for effecting such a retroactive cancellation, that is, a cancellation occurring on a date prior to the date the insurer is notified of the cancellation, the Court concludes that the power of attorney agreement between NJC and Hartford/Nutmeg is of no moment in this regard.

Colony contends that "contrary to NJC's second espoused position to the effect that the subject cancellation was somehow 'retroactive,' on the face of both §3550 and the subject cancellation notice, nothing could be further from the truth." (Rec. Doc. 77-2 at 19). Colony continues that "Hartford/Nutmeg mailed the cancellation notice on September 9, 2008 – more than ten days in advance of its effective date in the event (as here) NJC were to fail to act upon it." *Id.*

The problem with this argument however, is that it presupposes that Hartford/Nutmeg is standing in for the *insurer*, a position only invoked through an agency/mandate relationship between Hartford/Nutmeg and Colony, or, as noted above, implicitly through the operation of La. R.S. 9:3550 which does not apply. As noted *supra* however, Hartford/Nutmeg has denied that it was Colony's agent. And, because Hartford/Nutmeg was not an insurance premium finance company operating pursuant to La. R.S. 9:3550, was not Colony's agent/mandatary, and  was not the insurer itself, Hartford/Nutmeg accordingly lacks the power to effect cancellation of the Colony policy on a date occurring *before* the date that Colony was notified of the desire to cancel, i.e., October 2, 2008.

Based on a review of the evidence presented, the Court concludes that there is no genuine issue as to any material fact with regard to the inapplicability of La. R.S. 9:3550 or, consequentially, the effective date of cancellation. Accordingly the Court finds that cancellation was not effected until

20

October 2, 2008. Therefore coverage under the Colony policy was in effect on the alleged date of loss.

IV. **CONCLUSION**

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Leave to File Supplemental Memorandum on Premium Finance Issue (Rec. Doc. 140)** filed by Counter-Defendants, Hartford Fire Insurance Company and Nutmeg Insurance Agency, Inc., is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Leave to File Colony Insurance Company's Response to Hartford Fire Insurance Company's and Nutmeg Insurance Agency Inc.'s Supplemental Memorandum and Affidavit (Rec. Doc. 164)** filed by Plaintiff, Colony Insurance Company, is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Reconsideration (Rec. Doc. 142)** filed by Defendant, NJC Enterprises, is **GRANTED** to the extent that it **reinstates** NJC's Motion for Partial Summary Judgment on the Issue of Insurance Coverage **(Rec. Doc. 73)**;

**IT IS FURTHER ORDERED** that the **Motion to Re-File Rule 12(b)(6) Motion to Dismiss Cross Claim of Colony Insurance Company (Rec. Doc. 147)** filed by Counter-Defendants, Hartford Fire Insurance Company and Nutmeg Insurance Agency, Inc., is **GRANTED** to the extent that it **reinstates** Hartford/Nutmeg's Rule 12(b)(6) Motion to Dismiss Cross Claim of Colony Insurance Company **(Rec. Doc. 108)**;[18]

---

[18]The Court notes that argument on this motion was requested (Rec. Doc. 109); because this motion (Rec. Doc. 108) remains under submission the Docket Clerk is directed to reinstate this

**IT IS FURTHER ORDERED** that the **Renewed Cross-Motion for Summary Judgment of Colony Insurance Company on Issue of Insurance Coverage (Rec. Doc. 151)** filed by Plaintiff, Colony Insurance Company, is **GRANTED** to the extent that it **reinstates** Colony's Cross-Motion for Summary Judgment on Issue of Insurance Coverage **(Rec. Doc. 82)**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment on the Issue of Insurance Coverage (Rec. Doc. 73)** filed by Defendant, NJC Enterprises, is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Leave to File Supplemental Memoranda in Support of Motion for Partial Summary Judgment and in Opposition to Cross Motion for Summary Judgment (Rec. Doc. 178)** filed by Defendant, NJC Enterprises, is **DENIED as moot**;

**IT IS FURTHER ORDERED** that the **Cross-Motion for Summary Judgment on Issue of Insurance Coverage (Rec. Doc. 82)** filed by Plaintiff, Colony Insurance Company, is **DENIED**.

This 25th day of February, 2013.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

request for oral argument (Rec. Doc. 109).